Good morning. Joan Jacobs-Levy, appearing on behalf of the appellant and petitioner Alberto Corral. I would like to reserve three minutes for rebuttal. I think that what needs to be addressed here today is the threshold issue of whether the original 2255 pleading, so that the government may not allege that it was not put on notice of the claim. Pursuant to Federal Rule of Criminal Procedure 15C, an amendment relates back to the date of the original pleading when it arises out of the same conduct, transaction, occurrence that was set forth or attempted to be set forth in the original. May I ask you this, which is a suggestion that maybe your argument could be reframed. I understand that the first document he filed pro se on April 23rd was his motion, as it's called, for 2255, basically his petition for habeas. Correct. He then files on May the 8th, so basically two weeks later, this typewritten motion that is styled, among other things, as a motion to amend under Rule 15A. That was also filed pro se. It's obvious that he had the assistance of a jailhouse lawyer to prepare that. Why is that something that we need to look at as an attempt to amend, rather than simply a memorandum of points and authorities in support of his own? Now, you can just use ordinary civil language. Why? Just within the scope of his complaint. And we have a lot of case law that tells us that a pro se complaint should be construed generously. Why is this, everything he's saying in there, not construed, as we have to, generously, as within the scope of the complaint? Well, actually, that's what I argued in my reply brief. But I think that from the standpoint of the government, they're going to look to this recent Supreme Court case, Maile v. Felix, which kind of narrows Federal rule of criminal procedure 15C and says that the new claim, if this is to be construed as a new claim, cannot assert any facts that differ in both time and type from the original proceeding or the original pleading. In the original 2255, it appeared that the focus was on the loss to the defendant of his three-point reduction for acceptance of responsibility. However, he also, in that petition, did state in his supporting facts that, in fact, his attorneys of record for resentencing after remand did not litigate against this Court's decision to take away the formally granted decrease in offense level for acceptance of responsibility in spite of the fact that his motion to withdraw from the plea was unsuccessful, unsuccessful. Counsel's error increased the sentence by 67 months. So he's raising some facts, though sketchily, in his initial petition that goes to the motion to withdraw. It's our position that the memorandum of points and authorities simply clarifies and expands on the original petition rather than sets forth a new claim. He expands and clarifies in the memorandum of points and authorities by stating that the whole decision to withdraw the plea was based on advice of counsel. Well, let's just assume for the moment that that's correct and that we're looking at the merits of the question about whether advice of counsel is what got him in the mess that he got himself into. Yes. It seems to me that what happened was it's not the withdrawal of the guilty plea as such that got him in the mess. What got him in the mess was perjury. And the district judge found that in the course of the colloquy, Corral obstructed justice by committing perjury. And acceptance of responsibility is the flip side of obstruction of justice. They don't go hand in hand. And the district judge said, hey, I'm not going to give you an acceptance of responsibility since you obviously weren't telling the truth one time or the other. Well, I think that the district court, once he determined that there was a relation between the two, and the district court came back, needed to determine whether Mr. Corral, in making the statement to the court that he did, had been instructed or advised to do so by his attorney. Counsel aren't going to advise perjury, presumably. He did that to himself. Well, and again, in terms of whether or not this was perjury, you know, without going all the way back to the original issue of his trial counsel, I think we need to think of this in terms of an Alford plea. I think Mr. Corral believed — did not have the initial intent or knowledge to commit a drug offense. Now, whether he should have known, we're not here to argue that today. But I think in his mind, if his subjective intent was that he was hired to be this delivery driver, he was under the impression that these drugs that he was picking up, or these chemicals, rather, they were not illegal drugs, that these — the mere fact that he picked them up and transported them back made him guilty of the crime. I think what happened with Mr. Corral is when he realized that it required an intent to commit the crime, that that's when he raised the issue of factual innocence, because he did not intend to do anything illegal. He had no history of drug trafficking. He had no criminal record to speak of. I think he had a misdemeanor way back, and that was it. He was in criminal history category one. The Ninth Circuit in Corral 1, you know, felt that he had very limited involvement in this ongoing drug conspiracy he'd been driving for, I think it was a month or less than a month. So I think that Mr. Corral, particularly if counsel advised him that he should withdraw his guilty plea, he had to give a reason for withdrawing his guilty plea. And he believed in his head that he did not intend to commit a crime. He was not involved in making methamphetamine. He did not see methamphetamine. He didn't he picked up red phosphorus and iodine. He did not even pick up hydroiodic acid. So whether one considers that perjury, I mean, yes, I have to say that his statements on remand differed from his plea, the time of his plea agreement. But I think that he was merely trying to show, on advice of counsel, that he should be able to withdraw his plea, and that angered the district court. Well, I take it you don't disagree that the position he took when he tried to withdraw his guilty plea and the things he said to the court then aren't consistent with acceptance of responsibility. So if you were going simply on what happened the second time around, if he had refused to plead guilty and he asserted his defense, you wouldn't be surprised, and you don't contest here, the court's failure to give him credit for acceptance of responsibility. Is that part correct? Yes. I believe ---- I'm going to stop you there, because my real question is someplace else. It's your challenge is not to what the court did in light of what he said the second time around. It's that you think he was misguided into saying something the second time around. He made a bad choice. My concern with that, though, is the choice ultimately has to be his. And if he has decided based on counsel advice or based on anything that I'm not guilty, I'm going to assert my right to say I'm not guilty, isn't that a judgment that each defendant has to make for himself? But I think it's very important that his attorney advise him of the consequences that he's already made a plea, that he is subjecting himself to perjury, that the judge might take away the acceptance of responsibility points, and that he might end up, you know, he was robbed of his ability to self-determine because he was not getting the advice of counsel. And I think an evidentiary hearing is necessary for the judge to determine what, if anything, the attorneys told him and what they did. How much was Mr. Corral's choice, and how much was the attorney's decision? I've got 46 seconds left. If I can please reserve that. Sotomayor, surely. Thank you. Mr. Rooney. Kevin Rooney on behalf of the United States. I'd like to start by addressing Judge Fletcher's suggestion that the second pleading be considered hoisting authorities as to the first. Yeah. Which, of course, it also is labeled that, too. I mean, it's labeled all kinds of things. Right. I mean, it's to start with, it's labeled an amendment. Well, it's labeled that, and it's labeled hoisting authorities. And it's labeled, and it's so labeled in a pro se pleading prepared by a jailhouse lawyer, who seems to be in love with florid language and rule citation. And rather, and it's rather difficult to interpret or decipher. Right. But the first pleading, it seems to me, is very clear. The objection is, my lawyer was ineffective because at my sentencing hearing, he didn't object when the judge denied me a reduction in my offense level for acceptance of responsibility. That's his first round he raises in his 2255 that's filed in a timely fashion. Then he files, untimely, a completely different claim that says, my counsel was ineffective because, not at the sentencing hearing, but in the attorney-client relationship in the counseling, what I'll call the counseling area of the attorney-client relationship. He didn't tell me, this is a bad idea, or this is a very risky idea. It's very unlikely that you'll succeed in being able to withdraw your guilty plea. And not only will you not succeed, you're subject to an increased penalty, because you got a reduction for accepting responsibility. Now, you tell the district court you didn't do the crime. Your sentence is likely to go up, which sure enough is what happened. And that's why I think it doesn't relate back. I'm not sure how to pronounce the name of the case, Males v. Felix. Well, I was on that panel, and I think it's Males v. Felix, at least that was how it was pronounced to us at that point. I have to say that we were following that most liberal of judges in our decision, Frank Easterbrook, on the Seventh Circuit. And so Judge Easterbrook and our panel both got reversed.  Okay. And the government is relying on the Supreme Court. But it's still pronounced the same way. Yeah, still the same way. Yeah, we got the pronunciation right. Okay. And now the law, I mean, from the government's perspective, now the law is right. You have to rely on the common core operative facts. And it's not the trial and conviction. It's what's alleged here. And what was alleged at first was what did defense counsel do with sentencing. And what's alleged later is what did counsel do in the counseling the client, the advising the client thing, and that's not the same thing. You know, if I have to look at it as a Felix v. Male or Male v. Felix case under Rule 15a, I'm not sure I read the Supreme Court's opinion as restrictive as that, that is to say different in time and place. Well, this all surrounds a very discrete event. What happens on remand? He says on remand there was ineffective assistance of counsel. So he had before, I mean, his lawyers help him snatch defeat out of the jaws of victory. He gets a remand after a six-year sentence to look at double hearsay that might have contributed to the sentence being longer. After his lawyers are finished with him, he's got, no, what was it, a remand after a 14-year sentence. He ends up with an almost 20-year sentence, thanks to what, I mean, something wrong, something happened here. Well, no, it was not a good day for Mr. Corral, it's very clear. And the first time he said my lawyer was ineffective having me plead guilty, so he got other lawyers to have him unplead guilty, and he ended up worse. But I think to be, not to be flip, but to say there you go again, you don't just say he's saying his lawyer was ineffective on remand, so now we're going to examine the whole remand. That was the Court's, if I might say so, error, the Ninth Circuit's error in the original Felix v. Mill. The Supreme Court cites with approval, footnote 7 of the Felix v. Mill case, a case called Mandicina out of the Eighth Circuit. In that case, they said here's an operation, a good case for operation of relating back. The defendant originally made a claim saying that there was Brady failure, an erroneous Brady thing that had been failed in disclosing exculpatory evidence, and later he narrowed it down to a specific, a specific report. And they said that's an example of relation back. And I certainly agree with that. I looked at that case and I think the pattern in Mayall, which was a pro se pleading, lawyers get involved in the case and some months later you have an effort to add all the issues the pro se Petitioner didn't understand in the first instance. Here we have a pro se complaint, and two weeks later, another pro se, albeit jailhouse lawyer, document. There's no lawyer appointed. It just happens in between those two dates that the statute runs. Right. Which is, and that's, that's where we are. I mean, we've got a statute and it's very strict, and that's what Congress intended and that's what the Supreme Court said, that that statute is intended to encourage finality in criminal convictions. I mean, the case has been going on for 11 years. Now, going back to what happened in Mandicina, the Eighth Circuit said, when I read it, it's not in the Supreme Court's footnote, but I read the Eighth Circuit case this morning. It said, you can amend your complaint. We'll relate back to the failure to get discovery. But now you've brought another claim saying that your counsel failed to follow up on the discovery he did get. And the Eighth Circuit said, no, that's barred. You are limited to your failure to get discovery. So I don't know if the Court has any more questions with regard to the relation back. I don't think it matters whether lawyers get involved or not. The statute of limitations ran. Well, I think it matters to the extent that we do read pro se pleadings with some generosity. Right. And trying to figure out what he was beefing about the first time, it's different but not a real stretch to get to the re-articulation of the issue that reaches whether I got bad advice in the first place. Well, I respectfully disagree. His first time, he's saying he should have objected. I should have gotten acceptance of responsibility. His second time, he himself labels it's an amendment. And I realize, you know, he's a pro se. You give him a lot of deference. But the second time, it's hard to sort out. He says, they should have told me not to do this. Now, let me do it this way, because I'm looking at the facts of the mail case. And then I'm looking at what I think is the test laid out in the mail case. The facts are there was an initial pro se petition filed by the habeas Petitioner. And that initial habeas petition alleged the admission into evidence of videotape testimony that violated the Sixth Amendment right. Okay? Right. It was testimony from a witness. Yeah. Then there is an amended petition in which the lawyer now, now involved in the case, seeks to add a complaint that in the course of pretrial interrogation, the police used coercive tactics to obtain damaging statements. So basically, we've got a Fifth Amendment claim. Correct. And the Court says, sorry, you can't put those two things together because they were not, and I'm now quoting from the Supreme Court's opinion, because they were, quote, separated in time and type. Now, here, were these separated in time and type? Absolutely. No. Well, let me put this at you. Here, in type, there was one Sixth Amendment claim and there was one Fifth Amendment claim, and they were at quite different times during the totality of the proceeding, leading from arrest to eventual conviction. Here, it's only in effective assistance of counsel, and it's in a very discrete time period. Well, I disagree that it's in a very discrete time period. And the record would reflect that it's in a discrete time period. Do you disagree as to type as well? That is to say, it's all I have seen. Yeah. I disagree entirely. Okay. The one, I don't have the facts memorized. It appears to me that the remand took at least a year. It probably took longer. It's certainly in the docket. But the ineffective assistance of counsel that now we're talking about that don't embark on the suicidal course of telling the Court you're innocent and asserting your innocence, going down that line, that happens when you start advising your client at the beginning of the relationship, okay? I've been – you've retained me. Let's review your case. Let's review your options. Now, I think you've made that point, and if we had a lot of time, I'd let you keep going, but you're about to run out of it. And I want to let you argue, if we get to the substance of it, why is it not the appropriate thing to do, to remand, to find out, have an evidentiary hearing, which we've not, of course, had at this point, to find out from his counsel, okay, well, what did you tell him? Because he's saying, listen, they never told me that this might happen. Why shouldn't we have that evidentiary hearing? Because the district court found that there hadn't even been a showing that. Nowhere in that – But the district court, quote, found that in June of that same year, without even asking for a response from the government, well, from the State, excuse me, from the government, and without asking him to provide any testimony. The only documents the district court had were this initial 2255 motion and the pro se points and authorities. Right. And the district court looked at that and said there's nowhere in there where there's a showing that had you been advised differently – But there's a pretty clear allegation that that's so. That's what the points and authorities say. It's – well, we can differ on how clear the points and authorities are. And the district court also had the opportunity to see this man, and all I've seen is the cold transcript, vociferously protesting it, in a sense. And that was his beef with his very first attorney, of course, that that man had forced him to plead guilty. And I think it goes back to what Judge Reimer said. This was Mr. Corral's, it seems like, his crusade, that I didn't do this crime. I'm withdrawing my guilty plea. Let me – let me have my trial. Okay. Thank you. Are you – okay. Thank you, Mr. Mead. Ms. Levy. In the points and authorities on page 5, Mr. Corral stated that the entire argument challenging the plea was made on advice of counsel. When the court stated that Mr. Corral did not claim or show that he would have not repeatedly asserted his innocence, you know, regardless of whether he had known that he might lose the acceptance of responsibility reduction, he made that conclusion without determining who made the decision to assert innocence and who made the decision to move to withdraw the plea. And I think that's paramount if the case gets remanded, that that has to be found out. What the district court should have done was construe the claim, the very fact that the claim was made, to mean that Mr. Corral would not have moved to withdraw his plea had he been warned by counsel of possible sentence increase. The district court must analyze this by saying, if the facts asserted by the defendant are true, then does that give rise to – does that give rise to a finding that he deserves this evidentiary hearing? And the court did not make any construction one way or the other. He just concluded that, no, Mr. Corral would not have changed. He still would have asserted his innocence, regardless of whether or not he would have known that he might lose the acceptance of responsibility. And I think that's a stretch. I think the district court was irritated and angry by that time. It wasn't over a year. It had been from January. I understand your argument on that point, that your time has expired. If there are no questions, thank you very much. Thank you. The matter just argued will be submitted.
judges: Rymer, W. Fletcher, Clifton